THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS NELSON, Defendant-Appellant.

Second District   No. 83—989

Opinion filed January 24, 1985.

G. Joseph Weller and Robert Hirschhorn, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

The defendant, Thomas Nelson, was charged by information with two counts of murder and one count of armed violence. The charges stemmed from the March 22, 1983, stabbing death of his estranged wife, Tina Nelson. After a jury trial in the circuit court of Lake County, the defendant was found guilty of murder and armed violence and not guilty of voluntary manslaughter. The defendant was sentenced to 50 years' imprisonment on the murder conviction and was not sentenced on the armed violence conviction.

The defendant raises three issues on appeal: (1) whether it was error not to instruct the jury on voluntary manslaughter/unreasonable belief of justification, (2) whether the court erred in finding that the murder was accompanied by brutal and heinous conduct indicative of wanton cruelty and imposing a 50-year extended-term sentence, and (3) whether the murder and armed-violence convictions were carved from the same physical act, thereby requiring that the armed-violence conviction be vacated. We find the defendant's arguments to be without merit and, therefore, affirm.

On the morning of March 22, 1983, the defendant drove Mrs. Nelson and two of her co-employees to work at the Baxter-Travenol com-

plex in Deerfield. While the Nelsons were separated at this time, the defendant agreed to drive the three women to work because Mrs. Nelson's car would not start. That afternoon the defendant visited a friend, Penny Nichols, at her apartment. Mrs. Nelson telephoned him there at approximately 2 p.m. and asked if he had her car and what he was doing there. An argument ensued during which Mrs. Nelson demanded that he bring her car to her at work.

The defendant then drove to Baxter-Travenol, arriving about 3:15 p.m. The defendant told the receptionist that Mrs. Nelson's child was ill and in the hospital. The defendant knew the child was fine, but testified that he used this story because Mrs. Nelson had told him he would have to give some excuse to see her. The defendant also stated that he told Mrs. Nelson the story he had used and she agreed to go along with it. Judy Welsh, Mrs. Nelson's supervisor, and Cora McClelland, however, testified that Mrs. Nelson became hysterical and cried upon being told about her child.

The defendant and his estranged wife then left the building and walked to the car. The defendant testified that after they were both inside the car, Mrs. Nelson started an argument about her car and Penny Nichols and became hysterical. He tried to leave but she drew a knife from her purse, threatened him, and tried to stab him. A two- to three-minute struggle ensued during which he got his right arm around her and she got the passenger door open and her right foot outside the car. The defendant testified that she continued trying to stab him until he was able to force her hand open and get the knife. She then ran from the car to the building.

The State's evidence, however, showed that the defendant was not acting in self-defense. Cora McClelland testified that as she walked outside and asked the Nelsons if she could help, Mrs. Nelson got out of the car and called out that the defendant had a knife and had lied about the baby being ill. Mrs. Nelson then tried to break free from the defendant but he grabbed her by the neck and stabbed her in the face. Mrs. Nelson was then able to break free and run to the building.

Mary Pieja, a food service worker, testified that she was driving in the parking lot at the time and saw a man pick a woman up from the ground and push her against a car. The two people struggled and the man appeared to be stabbing the woman, although she never saw a knife.

Donna Waski and Debra Lo testified that they were parking their car at the time of the incident and saw two people inside a car who appeared to be struggling. The car's passenger side door was open

and the woman's feet were outside the car. As Waski got out of her car she saw that the man was holding the woman around the waist and appeared to be punching her. The woman then got out of the car and fell to her knees. Waski ran into the building, and, as she looked back, she saw the woman, bleeding from a facial wound, run from the car to the building. Debra Lo described the man as "pummeling" the woman's chest and face.

Dr. Helen Young testified as to the autopsy she performed, and that decedent had been stabbed nine times, resulting in a total of 12 stab wounds. The cause of death was internal hemorrhaging and collapsed lungs from the chest wounds.

■ The defendant's first argument on appeal is that the court erred in failing to instruct the jury, *sua sponte*, on voluntary manslaughter based on an unreasonable belief of justification. The proper instruction, if given, would have been Illinois Pattern Jury Instructions (IPI), Criminal, No. 7.05 (2d ed. 1981), which states:

"A person commits the crime of voluntary manslaughter when he kills an individual if, in performing the acts which cause the death,

■ he intends to kill or do great bodily harm to that individual or another;

or

■ he knows that such acts will cause death to that individual or another;

or

■ he knows that such acts create a strong probability of death or great bodily harm to that individual or another;

and at the time of the killing he believes that circumstances exist which would justify the deadly force he uses, but his belief that such circumstances exist is unreasonable."

The court is obligated, however, to use restraint in giving instructions *sua sponte* so as to not interfere with or frustrate defense strategy. (*People v. Requena* (1982), 105 Ill. App. 3d 831, 837, *cert. denied* (1983), 459 U.S. 1204, 75 L. Ed. 2d 436, 103 S. Ct. 1191; *People v. Spataro* (1978), 67 Ill. App. 3d 69, 74-75.) Interference with defense strategy may itself constitute error. (*People v. Precup* (1978), 73 Ill. 2d 7, 17.) In the present case the defendant testified that he acted in self-defense and tendered the appropriate jury instructions on the justifiable use of force. His account, if believed by the jury, would have been a complete defense. It is reasonable to assume, therefore, that defense counsel wished to force the jury to either accept or reject the defendant's version, and not to compromise on it as IPI Criminal No.

7.05 would have permitted them to do. Under these circumstances the court was not obligated to instruct the jury *sua sponte*.

■ The defendant argues, however, that once defense counsel had submitted one compromise verdict (voluntary manslaughter/provocation) there could be no valid strategical reason for not tendering all possible compromise verdicts. We disagree. The fact that defense counsel tendered a compromise verdict based on provocation would not affect his self-defense strategy since the jury would not consider the provocation instruction if they accepted the defendant's story of self-defense. As the court in *People v. Lewis* (1981), 97 Ill. App. 3d 982, 988, stated:

> "Significant strategy considerations may influence a defense counsel's decision not to present the jury with *the full spectrum of lesser included offenses* where a complete defense of self-defense is claimed. (*People v. Taylor.*) Hence, where the defense wholly refrained from tendering an instruction on a lesser included offense, the possibility that such restraint may have been a viable strategy decision militates against our invoking any exceptions to the waiver doctrine." (Emphasis added.)

Further, defense counsel may have refrained from tendering both voluntary manslaughter instructions for fear of confusing the jury and having them disregard both instructions. (See *People v. Strong* (1979), 79 Ill. App. 3d 17.) The defendant, therefore, may have decided to offer only the voluntary manslaughter/provocation instruction as a more plausible explanation of the 12 stab wounds.

■ The defendant argues that, if it was not error for the court to fail to instruct the jury *sua sponte*, then his counsel's failure to tender IPI Criminal No. 7.05 amounted to ineffective assistance of counsel under the sixth amendment as defined by the recent Supreme Court decision of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

Under *Strickland* the defendant must establish two elements:

> "First, the defendant must show that counsel's performance was deficient. *** Second, the defendant must show that the deficient performance prejudiced the defense. *** Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." (466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.)

In explaining this test the court stated:

> "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's con-

duct falls within the wide range of reasonable professional assistance; that is, *the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'* [Citation.] There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citation.]" (Emphasis added.) (466 U.S. 668, 689-90, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065-66.)

For the reasons already stated, we believe that defense counsel's failure to tender IPI Criminal No. 7.05 could have been sound trial strategy and therefore counsel's actions did not violate the sixth amendment.

■ The defendant lastly argues that, even if there was no error in failing to instruct the jury on voluntary manslaughter/unreasonable belief of justification originally, it was error for the court to fail to so instruct the jury after the jury had asked the court to review the guilty and not guilty verdicts and the combinations thereof. The defendant relies on *People v. Morris* (1980), 81 Ill. App. 3d 288, where the court held it was error not to answer the jury's explicit question on accountability when they had not been instructed on it.

In this case, however, the jury asked:

"Will you review the guilty and non-guilty verdicts and the combinations thereof, particularly with regard to the murder and voluntary manslaughter charges?"

There is nothing in this question to put the court on notice that the jury might have believed that the defendant had an unreasonable belief that circumstances existed which would have justified the killing of his estranged wife in self-defense. This question, therefore, did not require the court to instruct the jury on voluntary manslaughter/unreasonable belief in justification.

■ The second issue on appeal is whether the trial court erred in sentencing the defendant to an extended-term sentence of 50 years' imprisonment based on its finding that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty under sections 5—8—2(a)(1) and 5—5—3.2(b)(2) of the Unified Code of Corrections. Ill. Rev. Stat. 1983, ch. 38, pars. 1005—8—2(a)(1), 1005—5—3.2(b)(2).

We note, as a preliminary matter, that the trial judge did not conclude that murder was *per se* subject to an extended-term sentence as the defendant argues. To the contrary, the trial judge stated that while murder itself came "close" to being a brutal and heinous act,

the statute required "an exceptional situation."

The defendant contends that the circumstances of this case do not rise to the level required to impose an extended-term sentence because, while there were 12 stab wounds, the evidence indicated they were inflicted during a struggle when the defendant was defending himself. The defendant's argument, however, completely ignores that the jury was instructed on, and rejected, the defendant's account of self-defense. To the contrary, we conclude that the finding of several aggravating factors, including lack of remorse, telling Mrs. Nelson her child was seriously injured to lure her outside, premeditation and the number of stab wounds, sufficiently supports the court's extended-term sentence. See *People v. La Pointe* (1981), 88 Ill. 2d 482 (premeditated and cold-blooded murder of a cab driver followed by a callous attitude and a total lack of remorse); *People v. Devine* (1981), 98 Ill. App. 3d 914, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490 (clerk shot twice and stabbed seven times during a robbery).

■ The defendant also contends that the trial judge failed to consider his potential for rehabilitation as shown by his steady employment, his possible future promotion and his lack of prior criminal convictions. While our State constitution requires the court to consider the defendant's rehabilitation potential in sentencing him, it does not require the judge to give greater weight to that consideration than to the seriousness of the offense. (*People v. Ortiz* (1981), 96 Ill. App. 3d 497, 505.) Nor does the constitution require the judge to detail for the record the process by which he concluded that the penalty was appropriate. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 493.) As in *La Pointe*, the record indicates that the trial judge carefully considered the evidence in this case, including both mitigating and aggravating factors. The judge specifically noted he had read the presentence report and considered the defendant's lack of prior criminal behavior. The record, therefore, demonstrates that the court gave thorough consideration to the relevant factors in sentencing the defendant.

■ The defendant's last argument on appeal is that he cannot be convicted of both murder and armed violence because the stabbing of his wife was only one physical act. The defendant relies on the Third District case of *People v. Mitchell* (1981), 98 Ill. App. 3d 398, where the court held that stabbing the victim three times did not amount to three separate acts. The State relies on the contrary First District case of *People v. Mays* (1980), 81 Ill. App. 3d 1090, where the court held that shooting a victim three times did constitute three separate acts.

We believe this conflict was resolved in *People v. Dixon* (1982), 91 Ill. 2d 346. In *Dixon*, the defendant was convicted of mob action and aggravated battery for repeatedly striking the victim with a wooden broom or mop handle during a fight at the Du Page County jail. Our supreme court held that the separate blows, even though closely related, were separate physical acts and could support both convictions. Similarly here, each stabbing was a separate physical act and both convictions should stand.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and NASH, JJ., concur.