THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MIGUEL A. PENA, Defendant-Appellant.

Second District   No. 2—87—0517

Opinion filed May 26, 1988.

Charles E. Nave, of McNamee & Mahoney, Ltd., of Dundee, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and

Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Miguel Pena, was convicted in the circuit court of Du Page County of driving under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(2)), driving with a blood-alcohol content greater than .10 (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(1)), reckless driving (Ill. Rev. Stat. 1985, ch. 95½, par. 11—503), fleeing and eluding a peace officer (Ill. Rev. Stat. 1985, ch. 95½, par. 11—204), and three counts of speeding (Ill. Rev. Stat. 1985, ch. 95½, par. 11—601). Defendant appeals, raising the following issues: (1) whether the trial court erred in entering convictions on three counts of speeding arising from a single transaction or occurrence; (2) whether speeding is a lesser included offense of reckless driving; (3) whether the complaint was sufficient to charge reckless driving; (4) whether defendant was improperly convicted of both driving under the influence of alcohol and driving with a blood-alcohol content greater than .10 based upon the same physical act; (5) whether the State proved defendant guilty beyond a reasonable doubt of driving under the influence of alcohol; and (6) whether the State proved defendant guilty beyond a reasonable doubt of fleeing and eluding a peace officer.

Hanover Park police officer John Runion was on mobile radar patrol in the early morning hours of July 6, 1985. He was driving westbound on Lake Street at approximately 2:20 a.m. when he observed a black Ford Mustang heading in the opposite direction. The Mustang tripped his radar at 85 miles per hour. After checking the accuracy of his radar, he turned around and pursued the black car, activating his lights and siren in the process. Although he accelerated to 95 miles per hour, the Mustang continued to gain on him. The driver of the Mustang began weaving between lanes, forcing other cars to brake to avoid being hit. After about 1½ miles, the object of the pursuit was forced to stop at a red light at Somerfield Road. Runion pulled up behind and ordered the driver out of the car. As defendant, who was the driver, exited the car Runion noticed an odor of alcohol about him. The officer also noticed that defendant's eyes were bloodshot, that his speech was slurred, that he had difficulty getting out of the car, and that he swayed as he stood up. Runion then placed defendant under arrest and handcuffed him. Runion and another officer, Dexter Marks, searched defendant's car.

Runion drove defendant to the Hanover Park police station and gave him a breath test, which resulted in a reading of .14. Runion

cited defendant for the offenses noted above, as well as improper lane usage and illegal transportation of alcohol.

At trial, Runion and Marks testified for the State. Defendant testified in his own behalf. He admitted that he was speeding on July 6, 1985, but denied driving recklessly or attempting to elude Officer Runion. He stated that he did not hear the officer's siren and did not see the lights until he had stopped at the red light. He admitted having "a couple of drinks" that evening. He stated that he had had an argument at a bar with a girl he was dating and left quickly, taking out his frustrations on the Mustang's accelerator.

The court found defendant guilty of both driving under the influence counts and all three speeding counts, as well as reckless driving and fleeing and eluding. The court found the defendant not guilty of improper lane usage and illegal transportation of alcohol. The court sentenced defendant to concurrent terms of one year's probation with 60 days in the county jail on the driving under the influence of alcohol, reckless driving and fleeing and eluding counts, and imposed various fines thereon. It ordered defendant to pay court costs on the first speeding conviction, but did not impose any sentence on the remaining speeding counts.

■ Initially, the State concedes that defendant cannot be convicted of both driving under the influence and driving with a blood-alcohol content greater than .10 under the rule enunciated in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. In *King*, which we discuss more fully below, the supreme court held that a defendant cannot be convicted of more than one offense carved from the same physical act. (*King*, 66 Ill. 2d at 566.) In *People v. Atwell* (1984), 129 Ill. App. 3d 724, 473 N.E.2d 89, the State also conceded, and the appellate court agreed, that defendant could not be convicted of two driving under the influence offenses based on the same physical act. (*Atwell*, 129 Ill. App. 3d at 728; see also *People v. Malik* (1983), 113 Ill. App. 3d 206, 214, 446 N.E.2d 931.) We also agree with defendant and the State that one of defendant's DUI convictions must be vacated.

■ Defendant's first contested issue on appeal is whether the trial court erred in entering three speeding convictions arising from a single transaction. Defendant argues that *People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1, forbids multiple convictions for the same offense based on a single transaction or course of conduct. The State responds that the three convictions in fact represented different offenses against different victims.

The State contends that a speeding violation is "a particular act

at a particular moment and location." According to the State, at the initial "moment," the defendant was eastbound on Lake Street in the Village of Hanover Park, and Runion clocked him at 85 miles per hour in a 40-miles-per-hour speed zone. After Runion began his pursuit of defendant's vehicle, he accelerated to 95 miles per hour but could not catch up to defendant. At this point, there was other eastbound traffic on Lake Street, and the speed limit was 45 miles per hour. At some point, defendant entered the Village of Roselle and continued at approximately 95 miles per hour in a 45-miles-per-hour zone. Thus, the State postulates that it has defined three distinct offenses: At point one, defendant was traveling at 85 miles per hour in a 40 miles-per-hour zone, and the victims of the offense were the citizens of Hanover Park; at point two, defendant was traveling at least 95 miles per hour in a 45-miles-per-hour zone, and the "victims" were the other eastbound drivers on Lake Street; and at point three, defendant was driving 95 miles per hour in a 45-miles-per-hour zone, victimizing the citizens of Roselle. This reasoning is too tenuous to support the weight of the argument.

If we accept the State's argument, an officer, after following a speeder for, say 1,000 yards, will be able to write any number of tickets he chooses, depending on the units he uses: if he defines the offense as speeding for one yard, he could write 1,000 tickets. If he defines it as speeding for one foot, he could write 3,000, and so on. Such a result is not only absurd, it is specifically prohibited by *Cox*.

In *Cox*, the defendant had been convicted of two separate counts of indecent liberties with a child based on two separate but nearly simultaneous incidents against the same victim. The supreme court vacated one of the convictions, holding that the acts were so closely related as to have been part of the same course of conduct. *Cox*, 53 Ill. 2d at 106.

The State attempts to cast doubt on *Cox*, arguing that *King* and other subsequent cases have implicitly overruled it. However, in *People v. Sanford* (1983), 119 Ill. App. 3d 160, 456 N.E.2d 333, the Appellate Court for the Third District recognized that *Cox* and *King* were meant to coexist, as each applies to a different set of facts. *Cox* applies to the situation where multiple counts of the same offense are based on a series of closely related acts. *King*, on the other hand, applies to the situation where multiple offenses are sought to be carved from the same transaction. (*Sanford*, 119 Ill. App. 3d at 162.) This court has also recently articulated the difference between *Cox* and *King* and, implicitly, recognized the continuing validity of *Cox*. (*People v. Burmeister* (1986), 147 Ill. App. 3d 218, 225, 497 N.E.2d 1212.)

Furthermore, the instant case is undoubtedly controlled by *Cox.* Defendant was charged with three separate violations of the same section of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 1—101 *et seq.*) which must have occurred within a time span of approximately one minute.

The cases which the State cites involved different offenses based on different physical acts (*People v. Hutson* (1985), 138 Ill. App. 3d 553, 486 N.E.2d 259; *People v. Nelson* (1985), 130 Ill. App. 3d 304, 474 N.E.2d 23), different occurrences of the same event which were remote in time (*People v. Miller* (1983), 115 Ill. App. 3d 592, 450 N.E.2d 767, *cert. denied* (1984), 465 U.S. 1033, 79 L. Ed. 2d 701, 104 S. Ct. 1302 (two deliveries of controlled substances 15 days apart)), or multiple convictions of the same offense by the same physical act against different victims (*People v. Schultz* (1979), 73 Ill. App. 3d 379, 392 N.E.2d 322). The State's attempt to bring the instant case within the ambit of *Schultz* by contending that each offense had a different victim is particularly unpersuasive. *Schultz* dealt with crimes which, by definition, must be committed against a particular victim, notably aggravated kidnapping. (*Schultz,* 73 Ill. App. 3d at 382.) Speeding, on the other hand, is a so-called "victimless crime." The only elements the State must prove to obtain a speeding conviction are that defendant drove a vehicle upon a State highway at a speed greater than that which is reasonable and proper or endangered the safety of any person or property (Ill. Rev. Stat. 1985, ch. 95½, par. 11—601(a)), or that defendant violated the statutory speed limit (Ill. Rev. Stat. 1985, ch. 95½, par. 11—601(b)). We do not think the State means to argue that in every speeding prosecution it should be required to prove the additional element that there was a recognizable victim of the offense. Certainly the State did not present testimony of any of the alleged victims of defendant's speeding. Again, carrying this argument to its logical conclusion, each resident of Roselle and Hanover Park, and each driver on eastbound Lake Street within a given spatial and chronological proximity to defendant's offense, would be a potential victim, permitting the writing of a separate citation for each. We do not think the legislature, in enacting the speeding provisions of the Vehicle Code, intended such absurd results. Therefore, we vacate two of the defendant's speeding convictions.

■■■ Defendant next contends that he was improperly sentenced for even one count of speeding, since it is a lesser included offense of reckless driving. In *King,* the court held that prejudice results to a defendant who is convicted of more than one offense where some of them are, by definition, lesser included offenses. (*King,* 66 Ill. 2d at

566.) A lesser included offense has been defined as an offense which is "composed of some, but not all of the elements of the greater offense, and which does not have any element not included in the greater offense [citation], so that it is impossible to commit the greater offense without necessarily committing the lesser offense." (*People v. Delk* (1976), 36 Ill. App. 3d 1027, 1041, 345 N.E.2d 197.) The Illinois Vehicle Code makes guilty of reckless driving anyone "who drives any vehicle with a willful or wanton disregard for the safety of persons or property." (Ill. Rev. Stat. 1985, ch. 95½, par. 11—503(a).) Thus, the statute contains a wilful or wanton mental state which is not present in the speeding statute. Section 11—503(a) does not specify any particular manner in which the offense may be committed. Thus, reckless driving is not merely speeding plus the required mental state. In the instant case, Officer Runion testified that defendant was weaving through traffic in addition to driving at a high rate of speed. In finding defendant guilty of reckless driving, the trial court focused on his speeding, stating, "When a person is going that fast, I think there is a clear danger to other people." Nonetheless, there was evidence that defendant was weaving through traffic. In addition, speeding requires proof of an element which reckless driving does not, namely, that defendant violated the posted speed limit. Thus, it is possible to commit reckless driving without necessarily speeding, and defendant's convictions of both offenses were proper.

■ Defendant's third contention is that the complaint was insufficient to charge reckless driving. It is clear that a charging instrument must set forth "the nature and elements of the offense charged." (Ill. Rev. Stat. 1985, ch. 38, par. 111—3(a)(3).) This has been interpreted to mean that a defendant must be informed of the particular acts constituting reckless driving. (*People v. Griffin* (1967), 36 Ill. 2d 430, 433, 223 N.E.2d 158; *People v. Walker* (1974), 20 Ill. App. 3d 1029, 1031, 314 N.E.2d 641.) The purposes of the requirement that defendant be informed of the nature and elements of the offense are to permit him to prepare his defense and to bar a subsequent prosecution based on the same conduct. (*Griffin*, 36 Ill. 2d at 432.) In the instant case, the complaint charging reckless driving stated that defendant drove a vehicle "with a willful and wanton disregard for the safety of persons and property, to wit: drove over 95 miles per hour weaving through traffic while traveling east on Lake St." This complaint lists the specific conduct alleged to constitute reckless driving, that defendant drove 95 miles per hour while weaving through traffic. This was sufficient to permit the defendant to prepare his defense and would bar a subsequent prosecution based on defendant's speeding and weaving.

■ Defendant's final two arguments challenge the sufficiency of the evidence to prove him guilty of DUI as well as of fleeing and eluding a peace officer. As to the DUI conviction, defendant contends that although Officer Runion testified that defendant's blood-alcohol content was .14, he did not specify in what units this was measured, and therefore no presumption arose that defendant was under the influence of alcohol. The statute provides that alcohol concentration shall mean grams of alcohol per 210 liters of breath. (Ill. Rev. Stat. 1985, ch. 95½, par. 11–501.2(a)(5).) During Runion's testimony, the trial court took judicial notice of the Illinois Department of Public Health standards for blood analysis. Certainly, taking notice of the Department's standards would include the units in which alcohol concentration was measured.

Furthermore, both officers testified as to their opinions that defendant was intoxicated at the time of his arrest and pointed to numerous factors on which they based these opinions. Even absent breath-test evidence, the testimony of two arresting officers describing defendant's condition and behavior at the scene is sufficient to sustain a conviction of DUI. (*People v. Nunes* (1986), 143 Ill. App. 3d 1072, 1076, 494 N.E.2d 202; *People v. Winfield* (1975), 30 Ill. App. 3d 668, 671, 332 N.E.2d 634.) Even without the statutory presumption, the testimony of officers Runion and Marks was sufficient to convict defendant of driving under the influence of alcohol.

■■ Defendant also contends that he was not proved guilty beyond a reasonable doubt of fleeing and eluding. A conviction of fleeing and eluding requires proof of a "willful" failure to obey a visual or audible signal of a police officer. (*People v. Marquis* (1977), 54 Ill. App. 3d 209, 214, 369 N.E.2d 372.) Defendant points to his testimony that he did not hear the siren or see the lights until he was already stopped at the red light. However, Runion testified that he followed defendant for 1½ miles with his lights and siren activated and that, as he began to pursue defendant, the latter speeded up from 85 miles per hour to over 95 miles per hour.

A defendant's mental state may be inferred from the circumstances proved, and unless the inference is unreasonable, the reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Trump* (1978), 62 Ill. App. 3d 747, 748-49, 379 N.E.2d 370.) Furthermore, where evidence is merely conflicting, the appellate court will not substitute its judgment for that of the court or jury. (*Nunes*, 143 Ill. App. 3d at 1076.) The facts of *Trump* are similar to those of the instant case. The court held that where the officer followed the defendant for over a mile in a marked patrol car with lights

and siren activated, the jury could reasonably infer that the defendant wilfully attempted to elude the officer. (*Trump*, 62 Ill. App. 3d at 749-50.) The same inference was justified in the instant case.

In summary, we affirm defendant's convictions of DUI, reckless driving, fleeing and eluding a police officer, and one count of speeding. We vacate defendant's convictions of driving with a blood-alcohol content of greater than .10 and two counts of speeding, and the sentences imposed thereon.

Affirmed in part, vacated in part.

LINDBERG, P.J., and INGLIS, J., concur.