THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD GRAY, Defendant-Appellant.

First District (4th Division)   No. 86—1492

Opinion filed June 9, 1988.—Rehearing denied July 19, 1988.

Steven Clark and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Charles E. Antonietti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendant, Ronald Gray, was convicted of attempted murder, aggravated battery, and armed violence predicated on aggravated battery. He was sentenced to two terms of 15 years' imprisonment, to run concurrently.

On appeal, Gray contends that he was denied effective assistance

of counsel because his trial attorney allegedly refused to permit him to plead guilty; his sentence was excessive under the mitigating circumstances; Gray was denied effective assistance of counsel at the hearing on his motion to reopen sentencing because the attorney failed to advise the court of certain facts; and his conviction for armed violence predicated on aggravated battery must be vacated because it is based on the same act as his attempted murder conviction.

We affirm.

BACKGROUND

The facts can be quickly stated in light of Gray's post-conviction admission of guilt.

On June 28, 1985, Gray shot Reginald Patterson four times. At trial Patterson testified that Gray approached him with a single-shot pump shotgun and told him that he "got to kill" him. After Gray shot him once, in the groin area, Patterson fell and pleaded with Gray to "talk to" him. Gray shot Patterson three more times, in the thigh, the thumb area of one hand, and in the eye.

Patterson was taken to the hospital, where he registered no pulse and no blood pressure. After emergency surgery, Patterson recovered, although his eye was later removed.

In defense, Gray, his sister, Yvonne, and his mother, Helen, testified that he was at home at the time of the incident. Yvonne Gray also testified that Patterson had beaten her the day before the shooting.

Patterson's mother testified that Helen Gray had come to the house on the day of the shooting looking for Patterson and Yvonne's baby, stating that "all hell would break loose" if the child was not returned to the Gray home by 12 p.m.

The court found Gray guilty as charged but vacated two counts of aggravated battery and one count of armed violence.

During the sentencing hearing, Patterson testified as to the adverse effect his injuries have had on his life. The State argued that there were no factors in mitigation present.

Gray's attorney attempted to elicit more information as to the beating that his sister had received at the hands of Patterson but the trial court stated that it did not believe that the relationship between the victim and the sister of the accused was probative. Gray testified in mitigation that he was attending school part time and that he held a part-time job to support his fiancee and infant daughter as well as his own family.

The trial court sentenced Gray to 15 years in prison on the at-

tempted murder and armed violence charges.

Gray next made a *pro se* motion to reopen sentencing and to modify his sentence. He attached affidavits of himself and his sister which asserted that even though they had informed trial counsel that Patterson had frequently beaten Yvonne, and that she had filed assault and battery charges against him, the attorney told them not to mention it but instead to testify falsely in support of an alleged alibi. Gray's affidavit asserted that he had desired to plead guilty but that his counsel dissuaded him from doing so.

When the motion was heard, Gray's new attorney informed the court that Patterson had attacked Gray's mother within 48 hours of the shooting and had repeatedly beaten his sister. The court noted that while it was not aware of the details, it did not need to hear additional evidence because the court was fully mindful of the matter. The court denied Gray's motion to reopen sentencing.

OPINION

I

■ Gray contends that his trial attorney usurped Gray's right to decide how to plead to the charges. He also asserts that his attorney forced him to participate in a false alibi defense.

The record indicates that Gray signed a jury waiver form and chose to stand trial. He relied on an alibi defense that the court found to lack credibility in light of the State's evidence against him. Only after his conviction and sentencing did Gray come forth with the assertion that he had wanted to plead guilty all along but that his attorney persuaded him and his family members to lie under oath.

The trial court rejected Gray's motion to reopen sentencing based on this argument. Having heard the initial, now admittedly false testimony of the defense witnesses and having considered the affidavits and arguments in support of the motion to reopen sentencing, the trial court was in the best position to assess Gray's credibility on this point. Moreover, Gray's change of position is directly related to the result of his conviction and sentence; it is doubtful that he would have attempted to change his plea to guilty if he had been acquitted.

More significantly, Gray does not establish that a different result would have occurred if he had pleaded guilty. The transcript of the court's ruling on the sentencing matters indicates that it weighed the factors favoring Gray, such as his youth, lack of serious criminal history, and attempts to support his family and obtain an education. The court expressed its awareness of the provocation factor, that Gray felt

that he was defending his family. Nevertheless, the court could not lightly disregard the repeated shotgun wounds that Gray inflicted upon Patterson. While the *impulse* to protect or avenge an injured family member is understandable, acting upon the impulse in a deliberate manner designed to kill is inexcusable. Gray took a shotgun, sought out his victim, and fired four times, even shooting as Patterson hit the ground. His intent to kill was firmly established by the evidence, including his statement to Patterson.

We conclude that Gray was not deprived of due process or effective assistance of counsel. See *People v. Gornick* (1982), 107 Ill. App. 3d 505, 437 N.E.2d 892.

## II

■ Gray next argues that his sentence was excessive in light of his provocation, the unlikelihood that the circumstances leading to his conduct would recur, and his rehabilitative potential.

Those factors, while relevant, are not conclusive. (See, *e.g.*, *People v. Ortiz* (1981), 96 Ill. App. 3d 497, 421 N.E.2d 556.) The court must consider all factors, in aggravation as well as mitigation. Unless the trial court abuses its broad discretion, we cannot reverse, vacate, or modify the sentence imposed. *E.g.*, *People v. Ward* (1986), 113 Ill. 2d 516, 526, 499 N.E.2d 422; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.

Defendant was convicted of attempted murder and armed violence, both of which are Class X felonies. Such crimes carry prison terms of not less than six years and not more than 30 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(3).) The sentences of 15 years, therefore, are well within the statutory guidelines.

■ The offenses committed were serious and caused severe injuries to Patterson. While the circumstances giving rise to the crime are unlikely to recur, and the rehabilitative potential of Gray may be good, they do not minimize the permanent damage done to the victim. The court did consider these factors, however, and did not impose the maximum sentence. We find no abuse of discretion.

## III

■ Gray next contends that he was deprived of effective assistance of counsel during his motion to reopen the sentencing hearing. According to Gray, there was evidence that his attorney did not bring to the court's attention facts which would have supposedly minimized the extent of Patterson's injuries. In addition, his attorney had not read the trial transcript and was therefore unable to effectively argue

certain facts in mitigation.

Regarding the evidence of Patterson's injuries, we note that the testimony of four doctors was admitted by way of stipulation of the parties. The trial court also had the opportunity to observe the victim at trial and at the sentencing hearing. Moreover, Gray did not object to or refute any of the medical evidence that corroborated Patterson's testimony as to the nature and extent of his injuries.

At the hearing to reopen sentencing, Gray's attorney told the court that his client claimed that Patterson's injuries were a sham. No evidence was offered, however, to establish this assertion. The trial court did not believe that the injuries were feigned and instead found that Patterson had been crippled and blinded in one eye. The record strongly supports the trial court's belief.

The other main issue raised at the motion to reopen sentencing was the victim's provocation of Gray. The defense contended that the court failed to adequately assess the harm that Patterson had inflicted on Gray's sister and mother. Had the court heard evidence as to the alleged attack on Gray's mother, it would not have given Gray such a severe sentence.

We must reject this contention also. The court had been told of the trouble between Patterson and Gray's sister. While the court acknowledged that it was not aware of the details of the attack on Gray's mother, the court nevertheless noted the provocation as a possible mitigating factor. The court further stated that the provocation did not justify the shooting. We do not believe that the outcome of the sentencing hearing would have been different if Gray had been allowed to present additional evidence of provocation because it would have been cumulative. Furthermore, the court expressly stated that it had considered the matter. Therefore, the trial court did not abuse its discretion or commit reversible error in precluding further testimony of provocation. Hence, Gray's position that he was denied effective assistance of counsel during the motion to reopen sentencing is unpersuasive. See *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

## IV

■ Gray's final contention is that he was improperly convicted of both attempted murder and armed violence predicated on aggravated battery because both offenses were based on the same act. He relies on the "one act, one crime" rule of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. Gray cites authority for the proposition that since the armed violence conviction is based on the same acts as the

attempted murder count, the armed violence conviction must be vacated.

The State argues that Gray has waived this issue by not raising it before the trial court. The State alternatively argues that Gray committed several acts, sufficiently separated although interrelated, and that they were not lesser included offenses. In support the State cites cases in which multiple convictions were upheld for separate acts of stabbing, *People v. Jones* (1984), 128 Ill. App. 3d 842, 471 N.E.2d 590 (four stabbings sustained convictions for three counts of aggravated battery and one count of armed violence predicated on aggravated battery), *People v. Nelson* (1985), 130 Ill. App. 3d 304, 474 N.E.2d 23, and for separate blows of a beating, *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.

We agree with the State that Gray has waived our consideration of this issue. We note, however, that the trial court did not sentence Gray on the one aggravated battery conviction but sentenced him to concurrent, 15-year terms for attempted murder and armed violence predicated on aggravated battery. The attempted murder count charged him with the intent to commit the offense of murder by intentionally and knowingly attempting to kill the victim by shooting him with a gun. As defined, causing great bodily harm is not an element of the charge, as it is in aggravated battery. Since one or more of the four shots did cause great bodily harm, a separate conviction and sentence for armed violence predicated on aggravated battery appears proper. In any event, we need not consider this further because of Gray's waiver. *People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261.

For the foregoing reasons, we affirm Gray's convictions and sentences.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.