2021 IL App (2d) 191047-U
Nos. 2-19-1047, 2-19-1049, & 2-19-1050 cons.
Order filed May 14, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 19-CF-29 19-TR-131 19-TR-132 |
| ANTUAN J. HUBBARD, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant was properly convicted of aggravated fleeing or attempting to elude a peace officer when he continued driving for more than a mile after the officer activated his lights, airhorn, and siren.  The evidence was, however, insufficient to prove defendant guilty of operating an uninsured motor vehicle.

¶ 2    In case No. 19-CF-29, defendant, Antuan J. Hubbard, was charged with one count of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(4) (West 2018)) and two counts of resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2018)).  In case No. 19-TR-131, he was charged with driving with a revoked license (DWLR) (625 ILCS 5/6-

303(a) (West 2018)). In case No. 19-TR-132, he was charged with operating an uninsured motor vehicle (OUMV) (*id.* § 3-707(a)). After a jury trial on all of the charges, defendant was found not guilty of the second charge of resisting or obstructing a peace officer and guilty of the remaining charges. The trial court imposed a term of four years' imprisonment for aggravated fleeing or attempting to elude, and concurrent terms of 180 days in jail for DWLR and resisting a peace officer, and fined him $300 for OUMV. In these consolidated appeals, defendant contends that he was not proved guilty beyond a reasonable doubt of aggravated fleeing or attempting to elude and of OUMV. We disagree with the first claim of error and agree with the second claim. Therefore, we affirm in part and reverse in part.

¶ 3                                I. BACKGROUND

¶ 4      The charge of aggravated fleeing or attempting to elude alleged that, on January 2, 2019, defendant knowingly operated a motor vehicle on a public road in Aurora and that, after a peace officer gave him a visual or audible signal directing him to stop, he willfully failed or refused to obey the direction, fled and attempted to elude the officer, and, while doing so, disregarded two or more traffic control devices. The two charges of resisting or obstructing a peace officer alleged that (1) defendant later refused another officer's command to walk back toward him, and (2) defendant resisted arrest by trying to pull away from the arresting officers. The remaining charges are self-explanatory. We summarize the pertinent trial evidence.

¶ 5      Derrick Hight, an Aurora police officer, testified on direct examination as follows. On the evening of January 2, 2019, he was on patrol, in uniform and driving a marked squad car. When activated, the car's overhead lights flashed red and blue. The car also had a siren and an air horn. A dash camera was linked to a microphone that Hight wore. When the camera was switched on, which Hight could do by activating his overhead lights, the microphone was activated.

¶ 6    Hight testified that, at approximately 11:40 p.m., as he drove north on Ohio Street approaching Benton Street, he saw a silver Chevy Malibu turn from westbound Benton onto Ohio, approaching Hight's car in the opposite lane. The Malibu had only one functioning headlight, a traffic violation. A computer check showed that the car was not registered to defendant. As Hight slowed to a stop sign, the Malibu passed him and turned onto westbound North Avenue without activating its turn signal, another violation. Hight decided to follow the Malibu and possibly stop it. He turned west onto Second Avenue, parallel to North Avenue. After making several more turns, Hight turned west onto North and was able to see the Malibu as it approached a stop sign.

¶ 7    Hight testified that, at first, he followed the Malibu without activating the overhead lights. The Malibu turned onto southbound Jackson Street and then onto westbound Fifth Avenue. At this point, Hight decided to stop the car. He activated his lights, which switched on the dash camera. The Malibu kept on going. Hight then activated his airhorn, but the Malibu again did not pull over. Hight then activated his siren and radioed dispatch that the traffic stop had turned into active pursuit.

¶ 8    A video of the pursuit was published to the jury. Hight identified the Malibu's driver as defendant. Hight testified that, five times during the pursuit, defendant failed to make full stops at stop signs. The first time was when defendant turned from westbound Fifth Avenue onto southbound Fifth Street. The second was when he turned from southbound Fourth Street onto westbound Sims Street. The third was on westbound Sims Street at the intersection with Douglas Avenue, where defendant disregarded a stop sign as another vehicle with the right of way was about to turn onto Douglas Avenue. The fourth was when defendant turned east on Evans Road toward southbound Sexton Street and rolled through the stop sign. The fifth time was when

defendant turned west on Sims Street and again disregarded the stop sign at the intersection with Douglas Avenue.

¶ 9    Hight testified that, when the Malibu finally stopped, he started to shout commands at defendant and the passenger in the Malibu. By then, several other officers, including Che Earwood and Ryan Tinley, had arrived. Later, Earwood took over issuing verbal commands.

¶ 10    Hight identified a certified driver's license abstract for defendant. It stated that, on January 2, 2019, a revocation of the license was in effect. Hight testified that, while interacting with defendant, he was unable to locate any vehicle liability insurance and was never provided any.

¶ 11    Hight testified on cross-examination that, when defendant finally pulled over on Evans Road just before Sexton Street, he obeyed Hight's commands to turn off the car, put up his arms, and exit the car. The area of the pursuit was residential. Throughout the pursuit, defendant generally drove at about the same speed and stayed within the speed limit, except when he drove approximately 35 miles per hour through an alley that had a speed limit of 15 miles per hour.

¶ 12    Earwood testified as follows. He drove his marked squad car to the area of Sims Street and Sexton Street to assist Hight in pursuing defendant. Earwood saw that Hight's car's overhead lights were on, and he heard the car's siren. After Hight stopped defendant, Earwood positioned his car to the right of Hight's car. At some point, Earwood started issuing verbal commands to defendant. Earwood grabbed defendant's hands and ordered him to walk backwards with Earwood, but defendant soon pulled away and started to turn toward Earwood. At that point, Earwood tried to push defendant into Earwood's squad car, but defendant resisted, and Earwood pushed him onto the ground. Tinsley and several other officers tried to restrain defendant, but he continued to fight them. Eventually, the officers were able to arrest defendant.

¶ 13    Tinsley testified as follows. While on patrol in a marked squad car, he drove to the area of Evans Road and Sexton Street to assist Hight's pursuit of defendant. Arriving there, he saw that Hight's squad car had its emergency lights on, and he heard its siren. Two other police cars were arriving from elsewhere and following Hight; they had their emergency lights and sirens activated. Tinsley followed them. When defendant finally stopped his vehicle, Tinsley positioned his car behind those of Hight and Earwood. He went to the passenger's side of the Malibu and heard Hight and Earwood yell commands to defendant. Tinsley heard a scuffle, felt Earwood's car lurch in his direction, and heard something fall to the ground. He turned around and saw defendant on the ground. Soon, Tinsley and other officers were able to arrest defendant. From when he heard Hight call for assistance until he parked his squad car, Tinsley drove approximately 1½ miles.

¶ 14    The State rested.

¶ 15    Defendant testified that he had lived in Aurora until 2017. On January 2, 2019, he had two small children. They and Leah Wells, their mother, resided near Evans Road and Sexton Street. The children's usual bedtime was 9 p.m. Wells's home had an interior porch with security cameras. On January 2, 2019, at approximately 11:45 p.m., defendant was driving to Wells's home to see his children. On the way there, he noticed that he was being followed by police cars. The police cars' overhead lights were on, and he could hear the cars' sirens. After the stop, defendant followed all of Hight's commands.

¶ 16    Defendant rested. The State did not put on rebuttal evidence.

¶ 17    In his closing argument, defendant contended in part that the State's evidence did not prove beyond a reasonable doubt that he was guilty of OUMV. He noted that, although Hight testified that he found no proof of insurance, he did not testify that defendant was ever asked to produce

evidence of insurance or that defendant actually was uninsured. In rebuttal, the State referred to Hight's testimony that he neither found nor was provided proof of insurance.

¶ 18    On the charge of aggravated fleeing or attempting to elude, defendant conceded most of the elements of the offense and focused on whether his delay in stopping was willful and caused by the intent to flee or elude Hight. Defendant argued that his intent had been to go to Wells's home "to be safe." He generally drove within the speed limit and made no evasive maneuvers, such as sharp turns or driving off the road. In rebuttal, the State argued that defendant's testimony that he went to visit his small children three hours after their bedtime was incredible and that he had led the police on a five-minute chase for more than a mile, at one point rolling through a stop sign and risking a collision with another vehicle. The State noted the undisputed evidence that defendant was aware that Hight was following him, with his marked squad car's overhead lights and siren activated. Finally, the State argued, the law did not make the desire for a safe location a defense to fleeing and eluding.

¶ 19    The jury found defendant guilty of all the charges except one count of resisting arrest. After he was sentenced as noted, he timely appealed.

¶ 20                                II. ANALYSIS

¶ 21    Defendant contends that he was not proved guilty beyond a reasonable doubt of aggravated fleeing or attempting to elude and of OUMV. In reviewing a challenge to the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. *People v. Ward*, 154 Ill. 2d 272, 326 (1992). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable

inferences to be drawn from the evidence. *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). It is not our function to retry the defendant. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

¶ 22     With these principles in mind, we consider first the conviction for aggravated fleeing or attempting to elude. A person commits fleeing or attempting to elude when, having been given a visual or audible signal by a peace officer directing him to bring his vehicle to a stop, he willfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer. 625 ILCS 5/11-204(a) (West 2018). The officer must be in police uniform and, if he is driving a vehicle, the vehicle must display illuminated oscillating, rotating, or flashing red or blue lights which, when used in conjunction with an audible horn or siren, would indicate the vehicle to be an official police vehicle. *Id.* As charged here, a person commits aggravated fleeing or attempting to elude when, in addition to the foregoing, his flight or attempt to elude involves the disobeying of two or more official traffic control devices. *Id.* § 204.1(a)(4).

¶ 23     Defendant does not contest that he was driving the Malibu; that Hight was in full police uniform and driving a marked and properly equipped police car; that, using his car's lights and sound devices, Hight directed defendant to stop; that defendant continued to drive for more than a mile, or several minutes, after he knew that Hight was following him with his lights and siren activated; and that defendant disobeyed at least two official traffic control devices.

¶ 24     Defendant contests only the sufficiency of the proof that he acted willfully with the intent to disobey Hight's signal to stop and thus "fle[d] or attempt[ed] to elude [Hight]." *Id.* § 11-204(a). Defendant relies on the evidence that (1) he drove at a low speed, did not accelerate, usually obeyed the speed limit, and did not engage in evasive maneuvers such as driving onto the curb or jumping out of his car; and (2) he eventually brought his car to a halt peacefully and ultimately

complied with Hight's signal to stop. Thus, defendant asserts, the State did not prove the element of willfulness. For the following reasons, we disagree.

¶ 25    A person commits fleeing or attempting to elude when, the officer having given him the requisite signal to stop, he "*willfully fails or refuses to obey such direction*, increases his speed, extinguishes his lights, or *otherwise* flees or attempts to elude the officer." (Emphases added.) 625 ILCS 5/11-204(a) (West 2018). Plainly, there are four categories of offending conduct: three specific categories and a catch-all. A defendant commits the offense if he willfully (1) fails or refuses to obey the signal to stop; (2) increases his speed; (3) extinguishes his lights; or (4) engages in any other conduct that amounts to (a) fleeing or (b) attempting (successfully or not) to elude the officer.

¶ 26    Defendant contends in part that the State failed to prove willfulness because there was no evidence that he exceeded the speed limit (except in the alley) or engaged in evasive maneuvers such as making sharp turns. However, under the plain language of the statute, although speeding, extinguishing one's lights, and making sharp turns are all within the statutory prohibition, their absence was not fatal. Rather, under the first prong of fleeing or attempting to elude, a defendant can commit the offense where he "fails to or refuses to obey the signal to stop" after being properly signaled to do so.

¶ 27    The evidence showed that, for the entire pursuit, which covered more than a mile, defendant knew that Hight was following him in a marked police car and was ordering him to stop, first by flashing his overhead lights and then by flashing the lights, activating his air horn, and blasting his siren. Further, despite knowing that he was being ordered to stop, defendant chose to keep driving until he arrived in the vicinity of Evans Road and Sexton Street. The jury could have

properly found beyond a reasonable doubt that defendant willfully failed or refused to obey Hight's direction to stop even before the first stop sign was violated.

¶ 28     Defendant nevertheless argues that the jury might have considered the stop sign violations to prove "otherwise flees or attempts to elude the officer," such that any subsequent use of the same stop sign violations would amount to an improper enhancement. In support of this concern, defendant cites authority holding that a felony enhancement is a distinct element of an aggravated offense and must be submitted to the jury. See, *e.g.*, *People v. Chairez*, 2018 IL 121417, ¶ 17. In order to enhance the offense from a misdemeanor fleeing or attempting to elude to aggravated fleeing or attempting to elude, as charged, the State was required to prove the aggravating fact that defendant violated two or more traffic control devices. 720 ILCS 5/11-204.1(a)(4) (West 2018). This is significant because any fact, other than a prior conviction, which, by law, increases the penalty for a crime, is an element of a distinct and aggravated crime that must be submitted to the jury. *Chairez*, 2018 IL 121417, ¶ 17 (citing *Alleyne v. United States*, 570 U.S. 99, 101, 116-117 (2013) and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

¶ 29     *Chairez* does not avail defendant, however, because the jury was instructed that it needed to find the element that made fleeing or attempting to elude aggravating. Specifically, the jury was instructed as follows:

> To sustain the charge of Aggravated Fleeing or Eluding a Peace Officer, the State must prove the following propositions:
>
> *First Proposition:* That the defendant was the driver or operator of a motor vehicle; and
>
> *Second Proposition:* That the defendant was given a visual or audible signal by a police officer directing the defendant to bring his vehicle to a stop;
>
> *Third Proposition:* That the police officer was in police uniform and, if the officer was

driving a vehicle, that vehicle displayed illuminated, oscillating, rotating, or flashing red or blue lights, which when used in conjunction with an audible horn or siren, would indicate the vehicle to be an official police vehicle;

*Fourth Proposition:* That the defendant willfully failed or refused to obey such signal in order to flee or attempt to elude the officer; and

*Fifth Proposition:* That, when willfully fleeing or attempting to elude the police officer, the defendant disobeyed two (2) or more official traffic control devices.

In applying these instructions to the facts presented at trial, a rational trier of fact could have found that defendant had committed fleeing or attempting to elude prior to violating the first stop sign. See *People v. Pena,* 170 Ill. App. 3d 347, 354-55 (1998) (willful attempting to elude can be inferred from the failure to pull over). Indeed, the jury could have rationally considered as many as three of the stop sign violations in determining that defendant willfully failed or refused to obey the signal to bring his vehicle to a stop, which would have still left two more stop sign violations in support of the fourth proposition which rendered the offense aggravated. In any event, the existence of the aggravating factor of two or more traffic violations was certainly submitted to the jury, which found that it was proved beyond a reasonable doubt.

¶ 30    Defendant also contends that willfulness was not proved beyond a reasonable doubt, because "he did, by his own actions, bring the vehicle to a stop pursuant to the officer's signal" and did not thereafter attempt to escape from the police. This argument ignores the factual context of the eventual stop—*i.e.*, everything that happened before. By the time that defendant brought his vehicle to a halt, the offense of aggravated fleeing or attempting to elude was complete, and had been for some time. He did not undo the offense by choosing not to perpetuate it any further. Defendant's construction of the statute would undermine its purposes and invite absurdity. After

all, the prohibition of fleeing and eluding serves in part to encourage prompt compliance with law enforcement and avoid the needless delay and potential danger that result from resistance to commands to stop. To hold that a defendant does not commit fleeing and eluding if he gives the pursuing officer a reasonable chance to catch up with him later would not comport with these goals.

¶ 31    Accordingly, we conclude that a rational trier of fact could have found defendant guilty beyond a reasonable doubt of aggravated fleeing or attempting to elude.

¶ 32    We turn next to defendant's second contention on appeal: that he was not proved guilty beyond a reasonable doubt of OUMV, because the State did not prove that the Chevy Malibu was not covered by a liability insurance policy. See 625 ILCS 5/3-707 (West 2018). Defendant contends that Hight's testimony that he neither found nor was provided with proof that the car was insured was legally insufficient to prove the second element beyond a reasonable doubt. We agree.

¶ 33    In *People v. Merritt*, 318 Ill. App. 3d 115 (2001), the defendant drove a vehicle that neither he nor his passenger owned. A police officer stopped the vehicle and searched it. He cited the defendant for OUMV. At the defendant's trial, the officer testified that his basis for the citation was that " '[t]here was no evidence that the vehicle was insured. There was no insurance card presented to me at the time of this traffic stop.' " *Id.* at 116-117. The jury convicted the defendant of OUMV.

¶ 34    The appellate court reversed the conviction. It noted that, although the failure to comply with an officer's request for insurance deems a person to be operating without insurance (see 625 ILCS 5/3-707(b) (West 1996)), there was no evidence that the officer had asked anyone to produce an insurance card. *Merritt,* 318 Ill. App. 3d at 117. The mere lack of affirmative proof that the vehicle was insured did not prove beyond a reasonable doubt that it was uninsured. *Id.*

¶ 35    *Merritt* is directly on point and disposes of this case.  Hight testified only that he did not find, and was not provided, proof that the Malibu was insured.  He did not testify that he ever requested any such proof.  Defendant was not required to volunteer it.  *People v. Davis*, 2019 IL App (1st) 181492, ¶ 16-17 ("The plain language [of the statue], in accordance with common sense, sets up an expectation that an officer will ask for proof of insurance and the driver will provide it").  Moreover, as in *Merritt*, there was no evidence that defendant or his passenger owned the vehicle; the registration did not come back to defendant.  Therefore, we reverse defendant's conviction of OUMV and vacate the $300 fine.

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons stated, we affirm in part and reverse in part the judgment of the circuit court of Kane County.

¶ 38    Affirmed in part; reversed in part.