2019 IL App (3d) 170302

Opinion filed May 2, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0302 Circuit No. 16-CF-44 |
| CARL S. HANSEN, | ) ) ) | Honorable Jeffrey W. O'Connor, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, opinion.
Justices Holdridge and Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1     Subsequent to a bench trial, the trial court found defendant, Carl Hansen, guilty of aggravated fleeing or attempting to elude a peace officer in violation of section 11-204(a) of the Illinois Vehicle Code (Code). 625 ILCS 5/11-204.1(a)(1) (West 2014). Defendant appeals his conviction, claiming the State did not prove his guilt beyond a reasonable doubt when it was not shown that law enforcement activated red or blue flashing lights in an effort to stop his vehicle as required by the statute. We affirm.

¶ 2                                    I. FACTS

¶ 3        On January 28, 2016, the State charged defendant by information with one count of aggravated fleeing or attempting to elude a peace officer (*id.*) and several other related traffic violations.

¶ 4        On October 13, 2016, the case proceeded to a bench trial. At trial, Deputy Joseph Femali of the Henry County Sheriff's Department testified. On November 26, 2015, Femali initiated a traffic stop on the 300 block of East Court Street, also known as Route 81, in Henry County. Femali established that he was in uniform, driving a black, fully marked squad car with lights on top that were flashing red and blue. Deputy Corey Hixson of the Henry County Sheriff's Department saw Femali conducting the stop and pulled in behind Femali's squad car to assist. Femali stated that Hixson's squad car's emergency lights were on while assisting with the stop. Hixson testified that he was in uniform, driving a white, marked squad car with a light-emitting diode (L.E.D.) bar on top of the vehicle. He did not testify to the color of his squad car's emergency lights.

¶ 5        Hixson was observing traffic from his squad car while Femali was conducting the stop. Hixson watched a red Dodge passenger vehicle heading eastbound on Route 81 drive by Femali during the stop. Hixson believed the Dodge had not given Femali sufficient room to conduct the traffic stop in violation of Scott's Law. *Id.* § 11-907. Dash cam video from Femali's squad car showed the Dodge passing by him. The reflection of Femali's squad car's flashing red and blue lights were clearly recognizable in the dash cam footage. Hixson's squad car can be seen in the footage, without its emergency lights activated, beginning the pursuit of the Dodge. He initiated the pursuit of the Dodge to "make the driver aware that if you got someone—an emergency vehicle on the side of the road, *** make sure you give them plenty of room."

¶ 6    A short time after Hixson initiated the pursuit, he activated his forward emergency lights to maneuver around traffic separating him and the Dodge. The traffic pulled off to the shoulder allowing Hixson to pass and reestablish visual contact with the Dodge. Hixson then extinguished his emergency lights and accelerated to "catch up to the vehicle." Once within range, Hixson activated his forward radar. The Dodge was traveling at 70 miles per hour in a 55-mile-per-hour zone. Hixson flipped on all the squad cars lights; "everything [was] lit up." He closed the distance to within approximately three car lengths of the Dodge. He then activated his siren.

¶ 7    Hixson further described the lights on his squad car to the court: "[y]eah I [had] *** my wigwags in the front and rear activate[d] when I flipped the full switch all the way on. I [had] my L.E.D. light bar, which also has takedowns that flash too. All [of] that was illuminated."

¶ 8    The Dodge began to accelerate away from Hixson once the emergency lights and siren on his squad car were activated. The Dodge reached speeds varying between 85 and 90 miles per hour during the pursuit. The Dodge traveled at those speeds for approximately two miles on Route 81 while Hixson had his lights and siren engaged. During the pursuit, other traffic on the roadway pulled off to the side or stopped to let the vehicles pass. During closing arguments, defendant's attorney claimed that "[i]t wasn't the defendant causing these people to have to pull over because he was [not] creating a dangerous situation for them." The Dodge eventually came to a stop at which time Hixson made contact with defendant.

¶ 9    Defendant testified at trial. He stated that he saw the squad cars during the initial stop and "thought [he] went over a little bit[]" to "give them the room they need[ed]." He went on to explain that it was loud inside of his vehicle because of a detached exhaust system and the elevated volume at which he was playing his music. Defendant asserted, "I heard sirens, so I

3

leaned up to look in the mirror, and that's when I recognized the cop was behind me." Defendant further explained the moment he realized Hixson was behind him.

> "Q. Okay. And do you remember, was there anything that the vehicle was doing; lights, siren, anything?
>
> A. Sirens I heard over the music that I was listening to.
>
> Q. And that caused you to look in the rear-view or side-view mirror?
>
> A. Side-view.
>
> Q. And what else did you see?
>
> A. I just seen Hixson.
>
> Q. Okay. And were there lights going?
>
> A. Yes."

¶ 10   The trial court found defendant guilty of aggravated fleeing or eluding. The court also found Hixson "had all his lights and whistles running" while in pursuit of defendant. Defendant's motion to reconsider was denied. Defendant appealed.

¶ 11                                    II. ANALYSIS

¶ 12   When considering a challenge to the sufficiency of the evidence, a reviewing court must determine, viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wright*, 2017 IL 119561, ¶ 70. "[I]t is not the function of this court to retry the defendant." *People v. Evans*, 209 Ill. 2d 194, 209 (2004). In weighing evidence, the trier of fact need not disregard inferences which flow naturally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable

4

doubt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). The trial court's judgment will not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt as to defendant's guilt. *Wright*, 2017 IL 119561, ¶ 70.

¶ 13        Section 11-204(a) of the Code provides, in pertinent part:

> "Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop ***. The signal given by the peace officer may be by hand, voice, siren, red or blue light. Provided, the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which when used in conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle." 625 ILCS 5/11-204(a) (West 2014).

¶ 14        Defendant contends since the State failed to specify whether the lights activated by Hixson were "red or blue lights" as required by section 11-204(a), there is insufficient evidence to show that Hixson gave the statutorily required visual signal to stop. However, "[p]ursuant to section 11-204(a), the purpose of requiring use of a vehicle's 'illuminated oscillating, rotating or flashing red or blue lights' with a siren is so that they 'would indicate the vehicle to be an official police vehicle.' " *People v. Brown*, 362 Ill. App. 3d 374, 379 (2005). The only question before us is whether it can be inferred, based on the evidence, whether the lights used satisfied the statute, in that they were "oscillating, rotating or flashing red or blue lights which when used in

5

conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle." 625 ILCS 5/11-204(a) (West 2014).

¶ 15     Defendant relies on *People v. Murdock*, 321 Ill. App. 3d 175 (2001), and *People v. Williams*, 2015 IL App (1st) 133582, to support his argument that the State provided insufficient evidence. In *Murdock*, the State presented no evidence as to whether the officer pursuing the defendant was in uniform. *Murdock*, 321 Ill. App. 3d at 176. The reviewing court overturned defendant's conviction for aggravated fleeing. *Id.* at 176-77. The court found the State's failure to establish that the officer was in uniform fatal to its charge of aggravated fleeing. *Id.* In *Williams*, the evidence established that the officer was in civilian clothing. *Williams*, 2015 IL App (1st) 133582, ¶ 3. The court found *Murdock* to be controlling and reversed the defendant's conviction for aggravated fleeing. *Id.* ¶ 10. While we agree with the language in *Murdock* and *Williams* that " '[w]e are not free to rewrite the language of the legislature, which speaks for itself[,]' " (*Williams*, 2015 IL App (1st) 133582, ¶ 11 (quoting *Murdock*, 321 Ill. App. 3d at 177)) it was established at trial that Hixson was in uniform making these cases factually distinguishable. We find *People v. Brown*, 362 Ill. App. 3d 374, applicable to the instant case. In *Brown*, the reviewing court dismissed the same argument presented by defendant; that the statute was not met where the evidence failed to establish that the officer displayed red or blue lights while attempting to curb the defendant's vehicle. See *Brown*, 362 Ill. App. 3d at 379. The officer testified he was driving a marked squad car and engaged the vehicle's siren and emergency lights when he pursued the defendant. *Id.* Although the officer did not testify that the emergency lights were red or blue, the court concluded that it reasonably could be inferred that the officer activated the squad car's "illuminated oscillating, rotating or flashing red or blue lights" during the pursuit, clearly giving the defendant a visual sign to bring his vehicle to a stop. *Id.*

¶ 16    In the matter *sub judice*, Hixson testified that his squad car's emergency lights were illuminated during the pursuit. Hixson was in uniform and driving a marked squad car. Multiple vehicles, other than defendant's, pulled to the side of the road or stopped for Hixson prior to and during the pursuit. Defendant admitted that when he looked in his side-view mirror, he saw the lights of the squad car in conjunction with hearing the siren and "recognized [a] cop was behind [him]." Defendant's attorney astutely pointed out during proceedings that other vehicles on the road did not pull over because of any reckless behavior on the part of defendant. The natural inference from this is that the vehicles pulled over because Hixson activated his red and blue emergency lights. Femali testified that the emergency lights on his squad car were red and blue. This was supported by the video played at trial. It was established that Hixson and Femali worked for the same law enforcement department. The trial court found that Hixson had "all his lights and whistles running" during the pursuit. The foregoing evidence establishes that Hixson gave defendant a sufficient visual sign indicating the vehicle Hixson was driving was an official police vehicle.

¶ 17    Consequently, the trial court reasonably inferred from all of the evidence in the record that the emergency lights on Hixson's squad car satisfied the statute, in that they were "oscillating, rotating or flashing red or blue lights which when used in conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle." 625 ILCS 5/11–204(a) (West 2014). We find the evidence sufficient to support defendant's conviction for aggravated fleeing or attempting to elude a peace officer.

¶ 18                                 III. CONCLUSION

¶ 19    For the reasons stated above, we affirm the judgment of the circuit court of Henry County.

7

¶ 20        Affirmed.