# Illinois Official Reports

## Appellate Court

---

### *People v. Torrance*, 2020 IL App (2d) 180246

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH DARNELL TORRANCE, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-18-0246 |
| Filed | April 24, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 16-CF-3246; the Hon. Donna R. Honzel, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd and Thomas A. Lilien, of State Appellate Defender's Office, of Elgin (Phyllis J. Perko, of Harlovic and Perko, of West Dundee, of counsel), for appellant.<br><br>Marilyn Hite Ross, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Stephanie Hoit Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Jorgensen and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a jury trial, defendant, Kenneth Darnell Torrance, was convicted of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(4) (West 2016)) and sentenced to three years' imprisonment. On appeal, he contends that he was not proved guilty beyond a reasonable doubt. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The charge against defendant alleged that, on October 30, 2016, as he was driving, he willfully disobeyed a police officer's signal to stop, fled, and, in fleeing, disobeyed two or more traffic signals (*id.*). The offense was charged as a Class 3 felony because defendant allegedly had been convicted of the same charge on April 12, 2016 (see *id.* § 11-204.1(b)).

¶ 4    At trial, Rockford police officer Daniel Basile testified on direct examination as follows. On October 30, 2016, at approximately 1:45 p.m., he was driving an unmarked squad car north on Central Avenue, planning to turn east onto School Street. Basile was wearing a vest that said "Police" on the front and the back. Another officer was in the car. As Basile reached the intersection and turned, he saw a black Ford Taurus going west on School Street, approaching Central Avenue and slowing down for the red light. As the two vehicles passed each other, Basile made eye contact with the driver of the Taurus and recognized him as defendant. Basile told his partner that the driver was defendant. His partner responded that defendant did not have a valid driver's license. Basile immediately activated his lights and siren and made a U-turn to pursue defendant.

¶ 5    Basile testified that, as he made the U-turn, defendant disobeyed a red light at the intersection of School Street and Sunset Avenue, two blocks west of Central Avenue. Basile had to wait because there was still traffic in both directions on Central Avenue. He then proceeded through the intersection and followed defendant, who had turned and was driving south on Sunset Avenue. When Basile saw defendant turning west onto Andrews Street, he turned off the squad car's lights but kept following defendant. When Basile got to Andrews Street, defendant was increasing his speed. Defendant disobeyed the light at School Street and Sunset Avenue and "the stop sign[s] at Albert, Royal, Miriam, and Johnston [Avenues]."

¶ 6    Basile testified that, as he watched defendant accelerate and flee, he slowed down, because he was in a residential district with a speed limit of 30 miles per hour. After defendant disobeyed the stop signs on Andrews Street, he turned south. Basile turned south on Johnston Avenue to get to West State Street. When he arrived there, he was dispatched to the 300 block of Horace Avenue, where he saw the Ford Taurus that defendant had been driving. Later, Basile learned that the car was registered to Ashlyn Ausler. In court, Basile identified defendant as the driver of the Taurus.

¶ 7    Basile testified on cross-examination as follows. On October 30, 2016, his car had been equipped with a computer that his partner used to ascertain that defendant lacked a valid license. The check was made after Basile received the dispatch call and saw the Ford Taurus on West State Street. He estimated that about 10 minutes might have passed since the original fleeing incident. It would not have been safe to use the computer during the chase.

¶ 8    The State rested. Defendant's mother, Diane Young, testified as follows. On October 30, 2016, she was home all day. Defendant arrived there at 9 a.m. and departed about 6 p.m.

Between those hours, he left and returned twice and was gone for 20 to 30 minutes each time. Young could not recall when these absences took place, but she was certain that defendant had been at her home at 1:45 p.m. The intersection at School Street and Central Avenue was about half a mile from her house, and the one at Andrews Street and Johnston Avenue was probably less than a two-minute drive from her house.

¶ 9    The jury found defendant guilty, and the trial court sentenced him to three years' imprisonment. This timely appeal followed.

¶ 10                                              II. ANALYSIS

¶ 11    On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of aggravated fleeing or attempting to elude a peace officer. Fleeing and attempting to elude is defined as follows:

> "Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, willfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer, is guilty of a Class A misdemeanor. The signal given by the peace officer may be by hand, voice, siren, red or blue light. Provided, the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which when used in conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle. Such requirement shall not preclude the use of amber or white oscillating, rotating or flashing lights in conjunction with red or blue oscillating, rotating or flashing lights ***." *Id.* § 11-204(a).

¶ 12    As charged here, aggravated fleeing or attempting to elude a peace officer requires proof that, after a visual or audible signal has been given, the defendant's flight or attempt to elude "involve[d] disobedience of 2 or more official traffic control devices." *Id.* § 11-204.1(a)(4).

¶ 13    Defendant's contention is based on the construction of the statute. He does not dispute that the unmarked vehicle was equipped with the required lights and siren in accordance with the statute. See *id.* § 11-204(a). Further, he does not dispute that both the lights and siren were activated. But he argues that the statute requires proof that the squad lights remained activated until the completion of the offense. According to defendant, the continued display of the lights was necessary to give him notice that he was being pursued by police, because otherwise his failure to stop was not willful. He reasons that, as soon as Basile deactivated his lights, the pursuit came to an end, and thus, defendant was no longer fleeing or attempting to elude him. Therefore, defendant concludes, his failure to obey the stop signs on Andrews Street cannot be used to raise the offense to aggravated fleeing and eluding.

¶ 14    Defendant's argument involves both the sufficiency of the evidence and the construction of the pertinent statutes. In evaluating a challenge to the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. *People v. Ward*, 154 Ill. 2d 272, 326 (1992). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). It is not our function to retry the defendant. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004). We review *de novo* the construction of a statute. *Whitaker v. Wedbush Securities,*

*Inc.*, 2020 IL 124792, ¶ 16. We seek to effectuate the intent of the legislature. *Id.* Ordinarily, the best indicator of this intent is the statutory language itself, and if it is unambiguous, we must apply it straightforwardly. *Id.* To the extent that the language is not clear in a particular context, we may consider the purpose behind the law and the evils it was designed to correct. *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 106 (2000); *People v. Latona*, 184 Ill. 2d 260, 269 (1998). We must avoid a construction that would defeat a statute's purpose or yield an absurd result. *Latona*, 184 Ill. 2d at 269.

¶ 15     We turn to the language at issue. Simple fleeing and eluding requires that (1) the peace officer give the driver a signal to bring his vehicle to a stop, (2) the driver willfully fail or refuse to obey such a direction and flee or attempt to elude the officer, and (3) the signal to stop meet certain requirements, including the display of illuminated oscillating, rotating, or flashing red or blue lights that, when used in conjunction with an audible siren, indicate that the vehicle is an official police vehicle. 625 ILCS 5/11-204(a) (West 2016). To elevate the offense to aggravated fleeing and eluding, as charged and found here, the State must also prove that, after the signal is given, the driver's flight or attempt to elude involve disobeying two or more official traffic control devices. *Id.* § 11-204.1(a)(4). We do not agree with defendant that these statutes require the State to prove, as an element of aggravated fleeing or eluding, that Basile's squad car's lights remained activated until defendant had disobeyed at least two traffic control devices.

¶ 16     We consider first section 11-204(a), which defines simple fleeing and eluding. The plain meaning of this section is that the initial signal to stop must involve the display of the lights. As the language implies, and as courts have noted, the purpose of requiring the display of the lights (in conjunction with the sounding of an audible horn or siren) is to give notice to the targeted driver that the vehicle is an official police vehicle. See *People v. Hansen*, 2019 IL App (3d) 170302, ¶ 14; *People v. Brown*, 362 Ill. App. 3d 374, 379 (2005). Once the proper display has been made, the driver knows or should know that the vehicle is an official police vehicle. The driver does not lose this actual or imputed knowledge when the vehicle's lights are turned off. Nothing in the definition of simple fleeing and eluding requires that the display of lights *must* continue after a proper signal to stop has been provided. To hold otherwise would go beyond the plain language of the statute and needlessly frustrate its purpose.

¶ 17     Defendant contends, however, that the definition of aggravated fleeing and eluding required Basile to have kept his lights activated at least until defendant's second act of disobedience of an official traffic control device had been completed. Defendant concedes that Basile's lights were activated when he disobeyed the red light at School Street and Sunset Avenue. However, he argues that, because Basile deactivated his lights before defendant's second act of disobedience at the first stop sign on Andrews Street, the evidence is insufficient to convict him of aggravated fleeing and eluding. Defendant notes that simple fleeing and eluding requires a mental state of willfulness. 625 ILCS 5/11-204(a) (West 2016); *People v. Pena*, 170 Ill. App. 3d 347, 354 (1988) (simple fleeing and eluding requires a willful failure to obey officer's visual signal to stop). From this, he infers that aggravated fleeing and eluding also requires willful disobedience of the officer's further pursuit. He argues that once the squad car's lights were turned off, he was no longer on notice that he was being pursued. Thus, he argues, because the chase had apparently ended before he disobeyed the second traffic control device, he was no longer fleeing or eluding.

¶ 18　　　　We disagree. We need not decide whether section 11-204.1(a)(4) bars a conviction in the absence of *any* evidence that the targeted driver had notice that the pursuit was ongoing when he disobeyed two or more official traffic signals. Here, Basile testified that he initially activated both the car's siren and its overhead lights and that he later deactivated *the lights*. He said nothing about turning off the siren. The jury could infer that he kept the siren going as defendant continued down Andrews. This inference was especially logical given that, even after Basile deactivated the lights, defendant ran four stop signs and ditched his car on West State Street. It is a fair inference that he did not take these actions because he believed that Basile had called off the chase. That defendant behaved like someone trying to evade a pursuing officer was further evidence that he had notice that the pursuit was still on and that he willfully continued his efforts to evade Basile.

¶ 19　　　　　　　　　　　　　　　　III. CONCLUSION
¶ 20　　　　For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 21　　　　Affirmed.