2024 IL App (4th) 230011

NOS. 4-23-0011, 4-23-0012 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 26, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| JAY K. BATES, | ) | Nos. 21CF93 |
| Defendant-Appellant. | ) | 22MT27 |
| | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Doherty and Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a jury trial, defendant, Jay K. Bates, was convicted of aggravated fleeing

or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2020)) and driving in

excess of 35 miles per hour over the speed limit (*id.* § 11-601.5(b)). The Woodford County circuit

court sentenced defendant to 60 days in jail as to each conviction and 30 months and 24 months

of probation, respectively. Defendant appeals, arguing the State presented insufficient evidence to

support his conviction for aggravating fleeing or attempting to elude a peace officer. We affirm.

¶ 2                                I. BACKGROUND

¶ 3        On July 1, 2021, the State charged defendant by indictment with aggravated fleeing

or attempting to elude a peace officer (*id.* § 11-204.1(a)(1)) in that he was given a visual and/or

audible signal by a peace officer to bring his vehicle to a stop, knowingly refused to obey such

signal, and fled at a speed of at least 21 miles per hour over the speed limit (Woodford County case No. 21-CF-93). On January 25, 2022, the State also charged defendant by information with driving in excess of 35 miles per hour over the speed limit (*id.* § 11-601.5(b)) (Woodford County case No. 22-MT-27).

¶ 4 On March 23, 2022, the cases proceeded to a joint jury trial. The State presented the testimonies of Deputy Cody Geick of the Woodford County Sheriff's Office and Deputy Jared Meinart of the Livingston County Sheriff's Office.

¶ 5 Geick testified he was working patrol on the afternoon of June 18, 2021, in a marked patrol vehicle and wearing his uniform. He was driving on Route 116 behind a semitrailer when a motorcycle sped past him at a high rate of speed. The posted speed limit was 55 miles per hour. The motorcycle was orange, and the driver was wearing white shorts and a backpack. Geick activated his lights, which caused his dash camera to begin recording, and he turned on his siren. He attempted to catch up to the motorcycle while driving 96 miles per hour. After a couple of minutes, he terminated his pursuit for safety reasons and noted his vehicle could not go as fast as the motorcycle. He advised dispatch to notify police in Livingston County the motorcycle was headed in their direction. He was later notified by dispatch the driver had been apprehended in Pontiac, Illinois, in Livingston County. He drove to the site and identified defendant as the person who was driving the motorcycle during his pursuit. He read defendant his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant stated it was not him but then asked what the police could do for him, which Geick interpreted as, if defendant admitted to the crime, what could the police do for him in terms of the charges.

¶ 6 Geick's dash camera video was admitted into evidence. During the pursuit, the video showed a number of vehicles pulling over to allow Geick through. The video also displayed

different indicators for "mike, lights, brakes, and siren." Geick explained his "mike pack" was not on his body at that time because it was charging but the indicator for "mike pack" would have been green if it was turned on. The indicator for "lights" was lit because his lights were on, and the indicator light turned off when he turned off his lights and ended his pursuit. The "siren" indicator was not lit, but the siren could be heard in the video.

¶ 7        Meinart testified he was parked off the roadway in Flanagan, Illinois, in a marked sheriff's vehicle. Dispatch advised him to be on the lookout for an orange motorcycle driven by a white male with a backpack. The motorcycle driver was reported to be driving in excess of 100 miles per hour. Around 15 minutes later, he observed an orange motorcycle driving within a line of traffic at the speed limit. He pulled out and activated his lights, and the motorcycle took off. He pursued the motorcycle but then terminated his pursuit because he was driving 99 miles per hour and the motorcycle continued to pull away from him. He did not think it was safe to continue his pursuit and noted his vehicle was capped at 105 miles per hour. He observed the motorcycle passing other traffic and notified dispatch he terminated his pursuit and lost sight of the motorcycle. He later learned the motorcycle driver was apprehended, went to the site, and verified defendant was the same person who was driving the orange motorcycle. Meinart testified he told defendant he was the person he took off from, and defendant replied that he either did not know what Meinart was talking about or did not see Meinart.

¶ 8        Defendant testified he lived in Merrillville, Indiana, and was driving his orange motorcycle in Illinois on the date in question as part of a memorial ride for his grandmother. He was wearing a helmet, which made it difficult to hear anything but the wind. He was listening to music using earbuds and had the volume turned all the way up, which was not typical for him, but he was "drowning some sorrows." He admitted to passing several vehicles; however, he neither

saw a police vehicle with its lights activated nor heard any sirens. He did not know how fast he was driving because he never looked and could not provide an estimation. He stated his motorcycle only had one mirror, and when he sat low when travelling at a high speed, he could only see the sky when he looked at the mirror. He stated he attentively watched the vehicles in front of him because he was concerned a vehicle would pull out in front of him while he was driving fast. He said he was driving fast because he was at "rock bottom" and explained that he lost his grandmother two years ago, he lost his father one year ago, his fiancée left him and took his dogs, and he lost a house. When defendant drove past Meinart while driving in a line of traffic, he nodded in Meinart's direction as a show of respect. He took off once he approached the edge of town. He later exited the highway because he noticed his front tire was low on air and was then apprehended by police. He told police he merely drove a mile up the road, turned around, and came back. He admitted he lied to police but claimed he was in a state of duress because the police accused him of the instant charges.

¶ 9 The State admitted photographs into evidence depicting the orange motorcycle seized by police; defendant in handcuffs; and Geick's police vehicle, which demonstrated it was a Ford Explorer, displayed a "sheriff" decal, and was equipped with a light bar on the roof.

¶ 10 During closing arguments, the State argued defendant committed the crimes with respect to Geick's pursuit of him in Woodford County. However, the State argued the jury should view Meinart's observations and pursuit in Livingston County for credibility and as circumstantial evidence. Defendant argued the State's evidence was insufficient and, specifically for the charge of aggravated fleeing and attempting to elude a peace officer, argued he did not act willfully because he did not know police officers were signaling for him to pull over.

¶ 11　　　　　The jury found defendant guilty of both charges. The trial court sentenced defendant to 60 days in jail as to each conviction and 30 months of probation for aggravated fleeing or attempting to elude a peace officer and 24 months of probation for speeding. Defendant filed a motion to reconsider the sentence, which the court denied.

¶ 12　　　　　This appeal followed.

¶ 13　　　　　　　　　　　　　　II. ANALYSIS

¶ 14　　　　　On appeal, defendant argues the evidence presented was insufficient to support his conviction for aggravated fleeing or attempting to elude a peace officer. Specifically, he contends the State failed to prove (1) Geick's police vehicle was equipped with and displayed illuminated oscillating, rotating, or flashing red or blue lights and (2) defendant acted willfully. The State maintains the evidence was sufficient to sustain the conviction.

¶ 15　　　　　When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found each essential element of the crime beyond a reasonable doubt. *People v. Carter*, 2021 IL 125954, ¶ 42. The trier of fact, in this case the jury, "remains responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts." *People v. Harris*, 2018 IL 121932, ¶ 26. Thus, this court will not substitute our judgment for that of the trier of fact on questions pertaining to the weight of the evidence or credibility of witnesses. *People v. Gray*, 2017 IL 120958, ¶ 35. A criminal conviction will not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009). "This standard applies whether the evidence is direct or circumstantial, and circumstantial

evidence that meets this standard is sufficient to sustain a criminal conviction." (Internal quotation marks omitted.) *People v. Aljohani*, 2022 IL 127037, ¶ 66.

¶ 16    The Illinois Vehicle Code (Code) (625 ILCS 5/11-204(a) (West 2020)) defines fleeing or attempting to elude a peace officer as follows:

> "Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, wilfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer, is guilty of a Class A misdemeanor. The signal given by the peace officer may be by hand, voice, siren, red or blue light. Provided, the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which when used in conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle."

This offense is elevated to aggravated fleeing of attempting to elude a peace officer where such flight or attempt to elude "is at a rate of speed at least 21 miles per hour over the legal speed limit." *Id.* § 11-204.1(a)(1).

¶ 17    Here, Geick was in uniform and driving a police vehicle when he initiated his stop and pursued defendant. Defendant argues the State failed to prove Geick initiated the stop by displaying "illuminated oscillating, rotating, or flashing red or blue lights," which was required by statute. The State admits it did not present evidence regarding the specifics of Geick's lights but argues it could be reasonably inferred Geick's lights satisfied this requirement.

¶ 18        In support of defendant's argument, he primarily relies on *People v. Murdock*, 321 Ill. App. 3d 175 (2001), and *People v. Williams*, 2015 IL App (1st) 133582. In *Murdock*, 321 Ill. App. 3d at 176, the defendant was charged with aggravated fleeing or attempting to elude a peace officer and argued the evidence was insufficient because no evidence showed the officer who pursued him was in police uniform. The State argued the defendant should have known he was being pursued by a police officer based on the emergency lights and siren and that the purpose of the statute was nonetheless fulfilled. *Id.* at 177. The Appellate Court, Second District, agreed with the defendant and held the statutory requirement that the officer be in police uniform when signaling a defendant to stop was an essential element of the offense, which the State failed to prove. *Id.*

¶ 19        In *Williams*, 2015 IL App (1st) 133582, ¶ 15, the defendant was also charged with aggravated fleeing or attempting to elude a peace officer, but the officer testified he was in civilian clothing at the time of his pursuit. While relying on *Murdock*, the Appellate Court, First District, also found the State failed to prove an essential element of the offense, namely, that the officer was in police uniform. *Id.* The court similarly rejected the State's argument that the defendant should have known he was being pursued by a police officer based on the use of lights and a siren and emphasized the question is not whether the defendant knew the police were following him but, rather, whether the essential elements of the statute had been met. *Id.* ¶ 16.

¶ 20        Defendant argues the same rationale from *Murdock* and *Williams* applies to his case because section 11-204(a) explicitly states the police officer *shall* be in uniform and similarly explicitly states the police officer's vehicle *shall* display illuminated oscillating, rotating, or flashing red or blue lights. See 625 ILCS 5/11-204(a) (West 2020). Therefore, he argues, because there was no evidence as to the specifics of the lights on Geick's vehicle, his conviction cannot

stand. In reaching this conclusion, defendant acknowledges the cases relied on by the State favor the opposite conclusion because they find this element may be inferred. See *People v. Brown*, 362 Ill. App. 3d 374 (2005); *People v. Hansen*, 2019 IL App (3d) 170302. However, he simply contends these cases were wrongly decided.

¶ 21            In *Brown*, 362 Ill. App. 3d at 379, the defendant argued, as defendant argues here, the evidence was insufficient to support his conviction for aggravated fleeing or attempting to elude a peace officer because the officer failed to testify the emergency lights he activated were illuminated oscillating, rotating, or flashing red or blue lights as required by section 11-204(a) of the Code. The evidence demonstrated the officer was driving in a marked squad car and engaged the squad's siren and emergency lights when he gave chase. *Id.* at 378-79. There was no evidence presented as to the specifics of the emergency lights, but the Appellate Court, First District, found it could be reasonably inferred that the officer activated his squad car's illuminated oscillating, rotating, or flashing red or blue lights. The court explained the purpose of the lights and siren requirement is to indicate the pursuing vehicle to be an official police vehicle and, in the case before it, the officer clearly gave the defendant the statutorily required visual and audio signal to bring his vehicle to a stop. *Id.* at 379.

¶ 22            In *Hansen*, 2019 IL App (3d) 170302, ¶ 14, the defendant presented the same argument before the Appellate Court, Third District. The officer testified his squad car's emergency lights were illuminated during the pursuit, he was driving a marked squad car, and he was in uniform. *Id.* ¶ 16. Other vehicles pulled to the side of the road or stopped for the officer during his pursuit of the defendant, and it was evident the vehicles were not pulling over due to any reckless behavior on the part of the defendant. *Id.* The defendant also testified he saw the lights on the squad car, heard the siren, and recognized an officer was behind him. *Id.* At this point, the

court found "[t]he natural inference from this is that the vehicles pulled over because [the officer] activated his red and blue emergency lights." *Id.* The court added that (1) the dash camera video from the perspective of another officer who had contact with the defendant during the incident showed his police vehicle's lights were activated and were red and blue and (2) both officers worked for the same police department. *Id.* Therefore, following *Brown*, the court found the officer gave the defendant the requisite visual sign indicating he was driving an official police vehicle to satisfy section 11-204(a) of the Code. *Id.*

¶ 23 This is an issue of first impression for the Fourth District. The plain meaning of the statutory section at issue is that the initial signal to stop must involve the display of red or blue illuminated oscillating, rotating, or flashing lights. *People v. Torrance*, 2020 IL App (2d) 180246, ¶ 16. As discussed, both *Brown* and *Hansen* found the purpose of requiring this specific display of lights in tandem with an audible horn or siren to provide notice to drivers that the vehicle attempting to effectuate a traffic stop is in fact an official police vehicle. *Id.* While *Brown* and *Hansen* seem to elevate compliance with the statutory *purpose* over the statute's explicit requirement, we need not rely upon or even address such an approach. Here, the jury could have inferred compliance with the statutory requirements via circumstantial evidence. It is fundamental that the State need not present *direct* evidence of the light display, as it may satisfy this element with *circumstantial* evidence that allows the trier of fact to infer the light display was proper. See *People v. Toolate*, 45 Ill. App. 3d 567, 569 (1976) (explaining an offense may be proven entirely by circumstantial evidence and there is no distinction in the law as to the legal weight of circumstantial evidence versus direct evidence); see also *People v. Smith*, 2014 IL App (1st) 123094, ¶ 13 ("Circumstantial evidence is proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common

- 9 -

experience." (Internal quotation marks omitted.)). We emphasize "it is the responsibility of the trier of fact to draw reasonable inferences from basic facts to ultimate facts" (*Smith*, 2014 IL App (1st) 123094, ¶ 13), and "the trier of fact is not required to disregard inferences which flow normally from the evidence and to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt" (internal quotation marks omitted) (*People v. Wheeler*, 226 Ill. 2d 92, 117 (2007)).

¶ 24          In this case, we find the evidence of record satisfied the visual signal requirement of section 11-204(a). Geick testified he turned on his vehicle's lights when he began to pursue defendant. Further, when he turned on his lights, it activated his dash camera. His dash camera video was admitted into evidence. The vehicle's indicator for "lights" was lit at this time and only turned off once Geick terminated his pursuit. While pursuing defendant, other vehicles redirected to the side of the road to allow the officer to pass through. Similar to *Hansen*, it was clear other drivers were responding to the officer's signal instead of any reckless driving on behalf of defendant. We attach the photograph admitted into evidence of Geick's police vehicle.



¶ 25　　　　Geick's police vehicle was a marked Ford Explorer equipped with a light bar on the roof, and in Illinois, this is a common patrol vehicle with red and blue emergency lights. We note that jurors' common experience would unquestionably be influenced by the fact that the Code prohibits any vehicle other than police vehicles from displaying this configuration of lights. See 625 ILCS 5/12-215(a)(1), (c)(3) (West 2020). The jurors were not required to abandon their common knowledge and experience at the door to the courthouse, as they "are supposed to be competent in everything pertaining to the ordinary and common knowledge of mankind." *Hays v. Place*, 350 Ill. App. 504, 509 (1953). This approach is in keeping with the jury instruction given in this case, which directed the jury to "consider all the evidence in the light of [their] own observations and experience in life." See Illinois Pattern Jury Instructions, Criminal, No. 1.01 (4th ed. 2000).

¶ 26    Based on the foregoing, the natural inference is that Geick had his red and blue emergency lights activated when he pursued defendant. See *Hansen*, 2019 IL App (3d) 170302, ¶ 16. The evidence clearly established Geick used the requisite visual and audio signals, which, when used together, indicated his vehicle was an official police vehicle. Therefore, we find the evidence sufficient to sustain defendant's conviction on this basis.

¶ 27    Defendant also argues the State failed to prove he willfully failed or refused to obey Geick's direction because (1) he did not see police during the pursuits, (2) he was driving so fast that he was not paying attention to the cars he was passing, (3) he never heard a siren or saw lights as he was wearing a helmet, listening to his loud music, and traveling at a high rate of speed, (4) he only had one mirror on his motorcycle, (5) he could not utilize the mirror because he was hunkered down, and (6) he was focused on the road before him. The State argues the jury was free to reject defendant's explanation of events and find him not credible, as the other evidence presented was sufficient to prove defendant was aware Geick's police vehicle was behind him with its lights and siren activated seeking to pull him over. We agree with the State.

¶ 28    Whether defendant acted willfully came down to defendant's credibility and the circumstantial evidence. See *People v. Schofield*, 2024 IL App (4th) 220961, ¶ 69 (stating a defendant's mental state may be proved circumstantially by inferences reasonably drawn from the evidence, such as the defendant's actions and circumstances surrounding the offense). Defendant testified on his own behalf that he was unaware of Geick's pursuit, and the jury, as the trier of fact, acted within its right to reject this explanation. See *People v. Scott*, 2018 IL App (2d) 151056, ¶ 28 ("When a defendant elects to testify to explain inculpatory circumstances, the trier of fact may weight any inconsistencies or implausibilities in that testimony against the defendant.").

¶ 29     There is ample evidence of record to support the jury's verdict. As previously noted, other vehicles responded to Geick's signal as he pursued defendant. Defendant drove more than 100 miles per hour for a significant distance while Geick pursued him with visual and audio signals, and despite Geick increasing his speed, defendant continued to pull away from him. See *People v. Trump*, 62 Ill. App. 3d 747, 749-50 (1978) (finding, where the officer followed the defendant for over a mile in a marked patrol car with lights and siren activated, the jury could reasonably infer that the defendant willfully attempted to elude the officer). Defendant admitted to seeing Meinart, and the dash camera video showed defendant immediately took off at a high rate of speed after seeing him. Following two police pursuits, defendant appeared to only cease driving once he began experiencing issues with his front tire. At that time, defendant was apprehended by police and admittedly lied when he claimed he only drove up the road and back. See *Schofield*, 2024 IL App (4th) 220961, ¶ 73 (stating the defendant's lie to police could fairly be viewed by the jury as his consciousness of guilt and, when considered with the surrounding circumstances of the offense, provided sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt). Although defendant denied the instant charges, he seemingly asked Geick what the police could do for him if he admitted to the crime.

¶ 30     While drawing all reasonable inferences in favor of the prosecution, we conclude any rational trier of fact could have found defendant acted willfully beyond a reasonable doubt. Therefore, the evidence was sufficient to sustain defendant's conviction for aggravated fleeing or attempting to elude a peace officer.

¶ 31                        III. CONCLUSION

¶ 32     For the reasons stated, we affirm the trial court's judgment.

¶ 33     Affirmed.

*People v. Bates*, 2024 IL App (4th) 230011

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Woodford County, Nos. 21-CF-93, 22-MT-27; the Hon. Michael L. Stroh, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Daniel T. Mallon, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Gregory Minger, State's Attorney, of Eureka (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |